UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EGZONA AHMETI,

                              **Plaintiff,**

v.                                                                            1:16-CV-1081 (BKS/CFH)

**NEW YORK STATE UNITED TEACHERS; TOM ANAPOLIS**, in his official capacity as Executive Director of New York State United Teachers; and **MARK CHAYKIN**, in his official capacity as Director of Field Services of New York State United Teachers,

                              **Defendants.**
_____

**APPEARANCES:**

For Plaintiff:
**Shawn F. Brousseau, Esq.**
Napierski, Vandenburgh, Napierski & O'Connor, LLP
296 Washington Avenue Ext., Suite 3
Albany, NY 12203

For Defendants:
**Richard E. Casagrande, Esq.**
**Robert T. Reilly, Esq.**
Office of Richard E. Casagrande
800 Troy-Schenectady Road
Latham, NY 12110

**Hon. Brenda K. Sannes, United States District Court Judge:**

MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

       Plaintiff Egzona Ahmeti brings this action against Defendants New York State United Teachers ("NYSUT"), Tom Anapolis, and Mark Chaykin under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. (Dkt. No. 1, ¶ 1). Plaintiff alleges that she "has

1

been subjected to discrimination on account of her religion; her sex; and/or protected activity." (*Id.* at ¶ 10). In Count I, Plaintiff alleges discriminatory employment practices on the basis of her Muslim religion. (*Id.* at ¶ 107–14). In Count II, Plaintiff alleges discriminatory employment practices on the basis of sex. (*Id.* at ¶¶ 115–22). In Count III, Plaintiff alleges that she suffered unlawful retaliation after her mother—a Muslim and fellow NYSUT employee—complained to NYSUT on her behalf. (*Id.* at ¶¶ 123–27). In the pending motion, Defendants move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 9). For the reasons stated below, the motion is granted in part and denied in part.

## II.     BACKGROUND[1]

Plaintiff, a Muslim woman, "began her employment with NYSUT in or about January 2010 and was employed continual [sic] in temporary positions until her termination on or about June 24, 2015." (Dkt. No. 1, ¶¶ 11–12). She and her mother were the only Muslim employees at NYSUT's Latham, NY headquarters. (*Id.* at ¶ 13). Plaintiff "worked in various temporary administrative positions during the course of her employment with NYSUT," as a "Senior Support Staff Specialist, Support Staff Specialist-ADMIN and Senior ADMIN." (*Id.* at ¶ 14–15). Throughout her employment, "Plaintiff's goal . . . was to obtain a permanent, full-time position." (*Id.* at ¶ 16). She "was praised by her supervisors and encouraged to apply for various permanent positions," and she ultimately "applied for over 10 permanent positions at NYSUT during the course of her employment." (*Id.* at ¶¶ 20–21). Emily Samuels, NYSUT's Human Resources Manager, told her "to apply for all of the positions to show to NYSUT management that she was interested in and capable of doing the work required by the various positions." (*Id.* at ¶¶ 22, 81).

---

[1] The facts are taken from the Complaint and assumed to be true for the purposes of this decision. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

Plaintiff was told that taking a "temporary communications position was a smart move for her career at NYSUT because she would get more experience . . . and would be seen by NYSUT officers and management." (*Id.* at ¶ 18). As a result, she "left her full-time temporary position with the NYSUT polling center" to take that position during the day shift. (*Id.* at ¶ 17).

### A. Applications for Permanent Positions

In 2011, Plaintiff applied and interviewed for an Administrative Assistant position. (*Id.* at ¶¶ 24–25). Plaintiff was not offered the position, which was offered to a non-Muslim candidate. (*Id.* at ¶¶ 26–27). Likewise in 2013, Plaintiff applied for a Support Staff Specialist position, but she did not receive an interview and the position was offered to a non-Muslim candidate. (*Id.* at ¶¶ 28, 30–31). She also applied for an Administrative Assistant position that year and received an interview, but she was not offered the position, which the department offered to a non-Muslim candidate. (*Id.* at ¶¶ 32, 34–35). At an unspecified date, she again applied for an Administrative Assistant position. (*Id.* at ¶ 36). She was interviewed for the position but not offered it, and it was instead offered to a non-Muslim candidate. (*Id.* at ¶¶ 39–40). "In or about July, 2014," she applied for a different Administrative Assistant position. (*Id.* at ¶ 41). She was not interviewed, and "[t]he candidate who was hired for the position had no experience as an Administrative Assistant" and was not a Muslim. (*Id.* at ¶¶ 43, 45–46).

"In or about October, 2014, the Plaintiff applied for a position in the Human Resources/President's Office" and "was given a recommendation for the position by Frank Maurizio," Manager of Digital Communications at NYSUT. (*Id.* at ¶¶ 47–49, 100). Plaintiff was denied the position, which was offered to a non-Muslim candidate "without any experience at NYSUT," whom she alleges was "less qualified than the Plaintiff." (*Id.* at ¶¶ 51–53). In 2015, Plaintiff applied for an Administrative Assistant position with another letter of

3

recommendation from Frank Maurizio. (*Id.* at ¶¶ 54, 56). She was denied the position, which was offered to an allegedly "less qualified" non-Muslim candidate who was related to a former NYSUT manager. (*Id.* at ¶¶ 58–60).

Later that year, Plaintiff applied for another administrative position and her application again contained a letter of recommendation from Frank Maurizio. (*Id.* at ¶¶ 61, 63). She was pregnant and NYSUT was aware of her pregnancy. (*Id.* at ¶ 66). She was denied the position, which was offered to an allegedly "less qualified" non-Muslim candidate who was not pregnant. (*Id.* at ¶ 68).

For each job to which Plaintiff applied at NYSUT, the position was filled by a non-Muslim candidate. (*Id.* at ¶ 69).

### B. Communications Regarding Plaintiff's Religion and Pregnancy

On or about June 9, 2015, after Plaintiff received notice that she had been passed over for a permanent position with NYSUT, her mother emailed the President, Executive Vice President, two Vice Presidents, the Secretary-Treasurer, the Executive Director (Defendant Anapolis), and other management members of NYSUT "requesting an explanation for why the Plaintiff had been passed over for so many permanent positions." (*Id.* at ¶ 72). The email also "inquired whether the failure of the Plaintiff to be offered any positions was related to her religion." (*Id.* at ¶ 73). Days later, "NYSUT officers sent an email to the staff scheduling a staff barbeque for June 24, 2015," which fell within Ramadan, "the period during which Muslims fast from sunrise to sunset for 30 days." (*Id.* at ¶¶ 74–75). Plaintiff's mother emailed management advising them of the conflict, and in response, Tom Anapolis called her to his office. (*Id.* at ¶¶ 76–77). He told her "that she could attend the barbeque even though she could not eat anything" and "refused to

4

discuss the reasons that the Plaintiff had been passed over for so many positions at NYSUT." (*Id.* at ¶¶ 78–79).

On or about June 16, 2015, Plaintiff asked Emily Samuels for a list of positions that she had applied for during her employment and also asked questions about health insurance in light of her pregnancy. (*Id.* at ¶¶ 81–82). Samuels told Plaintiff to speak with Defendant Anapolis about both topics. (*Id.* at ¶ 83). On June 16, 2015, Defendant Anapolis "sent an email to Plaintiff's mother . . . regarding the staff barbeque issue and specifically refusing to comment on the complaint that the Plaintiff's religion [] was a factor in the hiring decisions." (*Id.* at ¶ 84).

### C. Termination

On June 22, 2015, Defendant Chaykin, Plaintiff's supervisor, called her "to his office and informed her that she was being terminated effective June 26, 2015." (*Id.* at ¶ 86). During the meeting, Defendant Chaykin "told the Plaintiff that she could go on unemployment and enjoy the summer and referenced her pregnancy." (*Id.* at ¶ 87). Additionally, he stated that the reason for her termination was that a particular project she was working on was ending; however, at the time of her termination, that project was ongoing and Plaintiff was working on a number of other projects. (*Id.* at ¶¶ 88–90). "In order to complete the [] project, NYSUT was required to hire other non-employees following [] Plaintiff's termination." (*Id.* at ¶ 91). "At other times, [Defendant] Chaykin stated that the reason for the Plaintiff's termination was budgetary;" however, at the time of Plaintiff's termination, the relevant department was under budget. (*Id.* at ¶¶ 95–96). During Plaintiff's employment with NYSUT, "the only other individuals who have had their employment involuntarily terminated were all minorities." (*Id.* at ¶ 80).

### D. Post-Termination

After her termination, Plaintiff expressed interest "in a temporary leave position which would be available . . . at NYSUT from September 2015 to September 2016." (*Id.* at ¶ 97). Plaintiff had previously worked in the relevant department, and Frank Maurizio, a manager in that department, had written her recommendation letters. (*Id.* at ¶¶ 99–101). Nevertheless, "the position was offered to a non-Muslim candidate who was not pregnant and had not complained about prior discriminatory acts by NYSUT." (*Id.* at ¶ 104).

## III. STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

## IV. DISCUSSION

Title VII provides that it is "an unlawful employment practice for an employer [] to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To survive a motion to dismiss, a Title VII plaintiff must allege: "(1) the employer discriminated against [her] (2) because of [her] race, color, religion, sex, or national origin." *Vega v. Hamstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015). "As to the first element, an employer

6

discriminates against a plaintiff by taking an adverse employment action against h[er]." *Id.* "As to the second element, an action is 'because of' a plaintiff's race, color, religion, sex, or national origin where it was a 'substantial' or 'motivating' factor contributing to the employer's decision to take the action." *Id.* (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 249 (1989) (plurality opinion). At the motion to dismiss stage, "the plaintiff's burden is 'minimal' – [s]he need only plausibly allege facts that provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Id.* at pp. 86–87 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

### A. Timeliness

Prior to filing suit, "Title VII requires that individuals aggrieved by acts of discrimination file a charge with the EEOC within 180 or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days 'after the alleged unlawful employment practice occurred.'" *Id.* at 78–79 (quoting 42 U.S.C. § 2000e-5(e)(1)).

The *Vega* court noted the manner in which the time bar is applicable to certain discrete acts:

> In *National Railroad Passenger Corp. v. Morgan*, the Supreme Court made clear that the word "practice" in this context refers to "a discrete act or single 'occurrence,'" and that "a discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" 536 U.S. 101, 110–11, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). **Consequently, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."** *Id.* at 113. At the same time, however, identifiable discrete actions are not time-barred simply because they occurred as part of an ongoing pattern of discrimination or retaliation that began outside the statutory period: "**Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'**" *Id.* at 114. Accordingly, claims tied to discrete acts in an ongoing adverse employment action that occurred within the statute of limitations period are not time-barred.

*Vega*, 801 F.3d at 79 (emphasis added). Defendants argue that because Plaintiff filed her administrative complaint with the EEOC on August 6, 2015, "claims occurring prior to October 10, 2014, 300 days earlier, fall outside the applicable statute of limitations and are time-barred." (Dkt. No. 9-3, pp. 4–5). Based on this argument, in her memorandum in opposition to the pending motion, Plaintiff "agrees that claims that accrued prior to October 10, 2014 are not actionable." (Dkt. No. 12-1, p. 6). Thus, to the extent that her claims contain allegations of unlawful discrimination and retaliation prior to that date, they are barred.

Plaintiff correctly argues, however, that allegations which pre-date October 10, 2014 "'may constitute relevant background evidence'" in the matter. (*Id.* at p. 6) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (quoting *United Airlines, Inc. v. Evans*, 431 U.S. 553, 558 (1977))); *see also Maxton v. Underwriter Labs, Inc.*, 4 F. Supp. 3d 534, 545 (E.D.N.Y. 2014) (compiling cases and emphasizing "that time-barred incidents are only considered as background evidence, and not as independently actionable events"). Thus, the Court considers facts underlying the time-barred allegations only to the extent that they are relevant to Plaintiff's timely claims.

### B. NYSUT Discrimination on the Basis of Religion

Plaintiff alleges that because of her religion, she was "subjected to a discriminatory, hostile and offensive work environment" that included "repeatedly being passed over for permanent positions which were filled by less qualified non-Muslim applicants" and her being "treated differently and much less favorably by employees, supervisors, managers and agents of NYSUT than similarly situated persons who were not Muslim." (Dkt. No. 1, ¶¶ 109–11). In order to state a Title VII claim for failure to hire, "a plaintiff must allege that she applied for a position, that she was qualified for that position, and that she was rejected under circumstances

8

giving rise to an inference of unlawful discrimination." *Carr v. North Shore – Long Island Jewish Health Sys.*, No. 14-CV-3257 (JS) (SIL), 2015 WL 4603389, at *2, 2015 U.S. Dist. LEXIS 99792, at *7 (E.D.N.Y. Jul. 30, 2015).

Where the Complaint states that "Plaintiff was qualified" for a position or that "Plaintiff's qualifications [for] the position were equal to or better than the candidate hired for the position," (*see, e.g.*, Dkt. No. 1, ¶¶ 37–38), those allegations are, alone, insufficient. Such assertions of qualification are just "threadbare recital[s] of a cause of action's element[]," and they lack facts that establish plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); *see also Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (noting that the complaint must allege facts plausibly supporting that the plaintiff was qualified for the positions at issue); *Arrocha v. City Univ. of N.Y.*, 878 F. Supp. 2d 364, 371 (E.D.N.Y. 2012) (noting that the plaintiff's "allegation that certain 'less qualified' 'fair skinned' candidates were hired over better black candidates is wholly conclusory"). However, Plaintiff alleges other facts that, when taken as a whole, make her qualification for the positions plausible. Namely, she alleges that she had previous work experience with NYSUT, that she received letters of recommendation from an NYSUT manager, and that her supervisors praised her and encouraged her to apply for various permanent positions.

Plaintiff's assertions that non-Muslims were offered the positions that she was denied are likewise sufficient to allege that she was rejected under circumstances giving rise to an inference of unlawful discrimination. In addition, she alleges that (1) only two Muslims were employed at NYSUT headquarters, (2) NYSUT would not reschedule a staff barbeque that coincided with Ramadan, and (3) Plaintiff was terminated shortly after her mother questioned whether Plaintiff's religion was related to NYSUT's failure to offer Plaintiff a permanent position. Courts in the Second Circuit have found that in failure to hire or promote cases, it is possible to

draw an inference of discrimination where the employer fills the position for which the plaintiff was rejected with an individual outside plaintiff's protected class. *See, e.g.*, *Dabney v. Christmas Tree Shops*, 958 F. Supp. 2d 439, 451 (S.D.N.Y. 2013) (noting that this proposition is "well-settled"); *see also*, *Littlejohn*, 795 F.3d at 313 (noting in a demotion case that "[t]he fact that a plaintiff was replaced by someone outside the protected class will ordinarily suffice for the required inference of discrimination at the initial prima facie stage of the Title VII analysis, including at the pleading stage"). It is therefore clear that Plaintiff has alleged sufficient facts to plausibly raise an inference of discrimination.

For these reasons, the Court finds that Plaintiff has sufficiently pleaded discrimination on the basis of religion. Therefore, Defendant's motion to dismiss her claim for relief from religious discrimination under Title VII is denied.

### C. NYSUT Discrimination on the Basis of Sex

Plaintiff alleges that she faced a "discriminatory, hostile and offensive work environment [that] included . . . being terminated when her pregnancy became known to members of management and directeors [sic] of NYSUT as well as not being offered a permanent position which would have entitled her to paid maternity leave and other benefits." (Dkt. No. 1, p. 12).

Title VII as amended establishes that "[t]he terms 'because of sex' or 'on the basis of sex' include . . . because of or on the basis of pregnancy." 42 U.S.C. § 2000e(k). Here, Plaintiff alleges that she informed NYSUT of her pregnancy only days before being terminated and that, during the termination meeting, Defendant Chaykin "told the Plaintiff that she could go on unemployment and enjoy the summer and referenced her pregnancy." (Dkt. No. 1, ¶ 87). She also alleges that Defendant Chaykin told her that she was being terminated because her project was ending, and further alleges that her project was in fact ongoing and that she was working on

10

a number of other projects as well.  (*Id.* at ¶¶ 87–90).  She further alleges that NYSUT "was required to hire other non-employees following [her] termination" and that at other unspecified times, Defendant Chaykin "stated that the reason for the Plaintiff's termination was budgetary," while the relevant department "was actually under budget."  (*Id.* at ¶¶ 91, 94–96).  Taken together, and drawing all reasonable inferences in Plaintiff's favor, these facts plausibly allege that Plaintiff's pregnancy was a motivating factor in the decision to terminate her employment.  Therefore, with respect to Plaintiff's claim of discriminatory termination on the basis of sex, Defendants' motion to dismiss is denied as against Defendant NYSUT.

### D. NYSUT Retaliation

Finally, Plaintiff alleges that she was terminated in unlawful retaliation for her mother's complaint to NYSUT regarding alleged discrimination against Plaintiff.  (Dkt. No. 1, ¶¶ 123–27).  "To state a Title VII claim for retaliation, the plaintiff must allege that (1) '[s]he engaged in protected participation or opposition under Title VII, (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action.'"  *Diaz v. City Univ. of New York*, No. 13 Cv. 2038 (PAC) (MHD), 2014 U.S. Dist. LEXIS 184757, at *66–67 (S.D.N.Y. Nov. 10, 2014).[2]  "Title VII's antiretaliation provision is 'construed to cover a broad range of employer conduct,' including terminating an individual for the protected activity of a close family member."  *Moore v. Kingsbrook Jewish Med. Ctr.*, No. 11-CV-3625 (MKB), 2013 WL 3968748, at *15, 2013 U.S. Dist. LEXIS 107111, at *56 (E.D.N.Y. Jul. 30, 2013) (quoting *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 173 (2011)).

Here, Plaintiff alleges that her mother's email is the relevant protected activity.  (Dkt. No. 1, ¶¶ 126).  She likewise alleges that NYSUT was aware of the protected activity and that she

---

[2] WestLaw citation unavailable.

was terminated, an adverse action. The remaining question is whether Plaintiff has sufficiently alleged a causal connection between the protected activity and the adverse action.

At the motion to dismiss stage, "[a] causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was closely followed by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). In *Littlejohn*, the Second Circuit found that the plaintiff "sufficiently pleaded facts that would indirectly establish causation" where she alleged that "her demotion closely followed her protests of discrimination." *Id.* at 319–20 (noting that the time between the two events was merely a few days). Here, Plaintiff likewise alleges that "[w]ithin a few days following the protected activity—the complaint to officers, directors, and management of the NYSUT regarding discrimination against the Plaintiff based upon her religion, the Plaintiff was subjected to an adverse employment action by the Defendants' termination of her employment." (Dkt. No. 1, ¶ 126). Thus, the Court finds that Plaintiff has sufficiently alleged a causal connection and Defendants' motion to dismiss her retaliation claim against NYSUT is denied.

### E. Claims against Individual Defendants

"Individuals cannot be held liable pursuant to Title VII."[3] *Hunt v. Con Edison Co. N.Y.C.*, No. 16-CV-0677 (MKB), 2016 U.S. Dist. LEXIS 67388, at *6 (E.D.N.Y. May 20, 2016)

---

[3] The Court notes that Defendants moved to dismiss claims against the individual defendants without citing to this caselaw, and the Plaintiff failed to address the argument regarding the individual defendants' liability. In any event, the caselaw regarding individual defendants' liability under Title VII is well-settled.

12

(citing, *inter alia*, *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012)).[4] Therefore, Plaintiff's claims against Defendants Anapolis and Chaykin are dismissed.

## V.   CONCLUSION

For these reasons, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 9) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that Plaintiff's Title VII claims against Defendants Anapolis and Chaykin are **DISMISSED with prejudice**; and it is further

**ORDERED** that Plaintiff's Title VII claims based on incidents where she was not promoted or hired prior to October 10, 2014 are time-barred; and it is further

**ORDERED** that Defendants' motion to dismiss is **OTHERWISE DENIED**.

**IT IS SO ORDERED.**

May 5, 2017
Syracuse, New York

Brenda K. Sannes
U.S. District Judge

---

[4] Westlaw citation unavailable.